O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD AUSTEN, | ) | Case No. CV 15-07372 DDP (FFMx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT DEANCO** |
| v. | ) | **HEALTHCARE, LLC'S MOTION TO** |
| | ) | **DISMISS AND MOTION TO STRIKE** |
| COUNTY OF LOS ANGELES, LOS | ) | |
| ANGELES COUNTY DEPARTMENT OF | ) | [Dkt. Nos. 17, 18] |
| PUBLIC SOCIAL SERVICE, | ) | |
| JESSICA CRUZ, CITY OF LOS | ) | |
| ANGELES, LOS ANGELES POLICE | ) | |
| DEPARTMENT, SANDRA HOLGUIN, | ) | |
| ALFREDO MORALES, DEANCO | ) | |
| HEALTHCARE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court are Defendant Deanco Healthcare, LLC's ("Defendant") Motion to Dismiss and Motion to Strike. (Dkt. Nos. 17, 18.) After considering the parties' submissions, the Court adopts the following Order.

I.   **BACKGROUND**

This case involves Defendants the County and City of Los Angeles, the County's Department of Public Social Services ("DPSS"), the Los Angeles Police Department ("LAPD"), and several members of those Departments, as well as Defendant Deanco

Healthcare, LLC.  (See Compl., Dkt. No. 1.)  The Plaintiff, Donald
Austen, alleges that these parties violated his constitutional
rights and committed several state law torts, all arising out of an
incident that resulted in Austen's involuntary residence at
Defendant Deanco's Mission Community Hospital for a seventy-two
hour psychiatric hold.  (Compl. ¶¶ 1, 42.)

According to Plaintiff's Complaint, Plaintiff is the President
and Founder of a nonprofit organization, Thursday's Child, that
serves endangered children.  (Id. ¶ 2.)  Plaintiff alleges he
contacted the Los Angeles County DPSS on February 2, 2015, to see
if he could get grants for his organization's "youth mental health
outreach programs," and he was told that he would be contacted the
next morning.  (Id. ¶ 17.)  The next day, Plaintiff alleges that he
received a call from "Jessica," a DPSS Mental Health Services
employee, who provided Plaintiff with a name and number to call for
the grant, but Plaintiff explained that he had no success calling
that number in the past.  (Id. ¶ 18.)  Plaintiff told Jessica she
should call the number, let them know Plaintiff would be calling,
and then call him back.  (Id.)

Later that day, Jessica called Plaintiff back and
"inexplicably began asking Austen if he was suicidal."  (Id. ¶ 19.)
Plaintiff denied he was suicidal, but Jessica was persistent with
her questioning, leading Plaintiff to demand to speak with a
supervisor, being put on hold, and then hanging up and calling
back.  (Id.)  Jessica then connected Austen with her supervisor,
who refused to give Austen more information other than her name;
eventually, Austen was told the name of the head of the department

1    at DPSS and Austen ended the phone call. (<u>Id.</u>)  Austen then called

2    the department head and left a message.  (<u>Id.</u>)

3        However, Plaintiff alleges that Jessica then called 911 "in

4    her official capacity, and under color of law" in order to get a

5    "welfare check" on Plaintiff, claiming Plaintiff was a client of

6    the DPSS.  (<u>Id.</u> ¶ 24.)  According to Plaintiff, Jessica claimed

7    that Plaintiff was "not coherent and tangential" on the phone and

8    had told her that he had suicidal thoughts, but had told her that

9    if Jessica sent police he was "going to take them out," and then

10   hung up.  (<u>Id.</u> ¶ 25.)  Plaintiff claims this was all a purposeful

11   and knowing lie by Jessica.  (<u>Id.</u> ¶¶ 20-26.)  Jessica allegedly

12   provided 911 with Plaintiff's address and made noncommittal

13   statements as to whether Plaintiff was a client of DPSS and what

14   Thursday's Child was.  (<u>Id.</u> ¶ 28-30.)

15       Then, the LAPD sent a helicopter, officers, and a SWAT team to

16   Austen's location, where Thursday's Child is headquartered.  (<u>Id.</u> ¶

17   32-33.)  Plaintiff received a phone call from an Officer Holguin

18   who asked if he was suicidal; Plaintiff denied that he was. (<u>Id.</u> ¶

19   32.)  Plaintiff later received a second call from Holguin,

20   demanding he come outside, where the helicopter and SWAT team were.

21   (<u>Id.</u> ¶ 33.)

22       When Plaintiff went outside, he saw the tactical team, the

23   police car, and an officer holding a gun pointing at Plaintiff's

24   gate.  (<u>Id.</u> ¶ 34.)  Austen was told to lie down on the ground, and

25   then was handcuffed, but he was told "cuffs go on, but they also

26   come off," with Holguin stating that the police only sought to talk

27   to Plaintiff.  (<u>Id.</u> ¶ 35.)

28

Handcuffed, Plaintiff alleges he was walked to the center of his street, where he was on display to the growing crowd of neighbors watching the spectacle. (<u>Id.</u> ¶¶ 36-40.)  Officers Holguin and Morales informed Plaintiff that they "had gone door to door to tell [the neighbors] that Austen was suicidal and a threat to others." (<u>Id.</u> ¶ 39.)  Then, Plaintiff was taken to a police station, where he was eventually asked if he had received a psychiatric evaluation, which Plaintiff denied. (<u>Id.</u> ¶ 41.)

Then, Holguin and Morales took Plaintiff to Mission Community Hospital ("MCH"), where Plaintiff was told he would be placed on a seventy-two hour psychiatric hold. (<u>Id.</u> ¶ 42.)  Morales told Austen that "he was not under arrest, and that 'unfortunately' they did not have cause to do so 'or [they] would have.'" (<u>Id.</u> ¶ 43 (alteration in original).)  Austen asked what would happen if he was found to be mentally sound and Holguin told him "that she was writing her report in a way that he would not be released early no matter what." (<u>Id.</u> ¶ 44.)

However, Holguin and Morales left Austen "in the care of the MCH" after removing his handcuffs and did not fill out an intake form or do any other process. (<u>Id.</u> ¶ 45.)  The intake nurse at MCH "asked if Austen was dangerous to others or himself" and the officers said he was not, removed his cuffs, and led Austen to a gurney "where he sat — unrestrained and unwatched — for several more hours." (<u>Id.</u> ¶ 46.)

Plaintiff alleges that MCH "is under contract with the County of Los Angeles and City of Los Angeles to serve as a holding facility for persons involuntarily taken into custody under California Welfare and Institutions Code section 5150." (<u>Id.</u> ¶

47.)  Plaintiff also alleges that MCH, including its intake nurse, knew that he was not a danger to himself or others, and that the officers told MCH and the nurse that he was not a danger.  (Id. ¶ 52.)  There was no probable cause, Plaintiff states, to take him into custody, but MCH did take him "into involuntary custody in violation of his constitutional rights to liberty under the 4th and 14th Amendments and in direct violation of the specific provisions of California Welfare and Institutions Code section 5150."  (Id.)  Plaintiff further alleges that the officers and MCH failed to provide required warnings under section 5150.  (Id. ¶¶ 53-55.)

While at MCH, Austen's blood was drawn "against his will," and he was interviewed by an emergency room doctor, although not about his mental health, given sleeping pills and antibiotics, and then taken to a locked psychiatric unit.  (Id. ¶¶ 56-58.)  Plaintiff alleges that no "psychiatrist or trained mental health evaluator from MCH ever interview[ed] Austen or examine[d] him to assess him as required" by section 5150.  (Id. ¶ 57.)  Eventually, Austen was visited by a psychologist, detective, and intern from "DSV"[1] who all apologized for the incident but claimed to lack authority to release him.  (Id. ¶ 59.)  On February 7, 2015, Plaintiff alleges that he was finally released from custody, but came home to see that the police had searched his entire home in his absence.  (Id. ¶ 60.)

Defendant Deanco Healthcare, LLC, d/b/a Mission Community Hospital, has moved this Court to dismiss the seven causes of action against it: (1) violation of the Fourth and Fourteenth

---

[1]   In his Opposition to the Motion to Dismiss, Plaintiff explained "DSV" should be "MCH."  See Opp'n at 8.

1  Amendments under Section 1983 for excessive force and illegal
2  detention; (2) violation of due process under Section 1983; (3)
3  violation of California's Welfare and Institutions Code section
4  5150; (4) false arrest and imprisonment; (5) negligent infliction
5  of emotional distress; (6) intentional infliction of emotional
6  distress; and (7) false light invasion of privacy. (Mot. Dismiss
7  at 2.)  Defendant also seeks to strike from the complaint any
8  reference to or prayer for punitive damages and attorneys' fees, at
9  least as it relates to its own actions as alleged in the complaint.
10 (Notice of Mot. Strike at 2-3.)  The Court notes that the parties
11 have agreed that the ninth, tenth, and eleventh causes of action in
12 the complaint are no longer alleged against Defendant Deanco.
13 (Notice of Mot. To Dismiss at 2.)

14 **II.  LEGAL STANDARDS**

15     **A.   Motion to Dismiss**

16     A 12(b)(6) motion to dismiss requires a court to determine the
17 sufficiency of the plaintiff's complaint and whether it contains a
18 "short and plain statement of the claim showing that the pleader is
19 entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule
20 12(b)(6), a court must (1) construe the complaint in the light most
21 favorable to the plaintiff, and (2) accept all well-pleaded factual
22 allegations as true, as well as all reasonable inferences to be
23 drawn from them.  See Sprewell v. Golden State Warriors, 266 F.3d
24 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187
25 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir.
26 1998).

27     In order to survive a 12(b)(6) motion to dismiss, the
28 complaint must "contain sufficient factual matter, accepted as

1    true, to 'state a claim to relief that is plausible on its face.'"

2    Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

3    Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However,

4    "[t]hreadbare recitals of the elements of a cause of action,

5    supported by mere conclusory statements, do not suffice."  Id. at

6    678.  Dismissal is proper if the complaint "lacks a cognizable

7    legal theory or sufficient facts to support a cognizable legal

8    theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097,

9    1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63

10   (dismissal for failure to state a claim does not require the

11   appearance, beyond a doubt, that the plaintiff can prove "no set of

12   facts" in support of its claim that would entitle it to relief).

13        A complaint does not suffice "if it tenders 'naked

14   assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556

15   U.S. at 678 (quoting Twombly, 550 U.S. at 556).  "A claim has

16   facial plausibility when the plaintiff pleads factual content that

17   allows the court to draw the reasonable inference that the

18   defendant is liable for the misconduct alleged."  Id.  The Court

19   need not accept as true "legal conclusions merely because they are

20   cast in the form of factual allegations."  Warren v. Fox Family

21   Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

22        **B.   Motion to Strike**

23        Rule 12(f) of the Federal Rules of Civil Procedure states that

24   the "court may strike from a pleading . . . any redundant,

25   immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.

26   12(f).  Immaterial matter is that which has no bearing on the

27   claims for relief or the defenses being pled.  Whittlestone, Inc.

28   v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010).  Impertinent

7

1  matter consists of statements that do not pertain, and are not

2  necessary, to the issues in question.  Id.  Under Rule 12(f), the

3  court has the discretion to strike a pleading or portions thereof.

4  MGA Entm't, Inc. v. Mattel, Inc., 2005 WL 5894689, at *4 (C.D. Cal.

5  2005).  "A motion to strike under Rule 12(f) should be denied

6  unless it can be shown that no evidence in support of the

7  allegation would be admissible, or those issues could have no

8  possible bearing on the issues in the litigation."  Gay-Straight

9  Alliance Network v. Visalia Unified Sch. Dist., 262 F. Supp. 2d

10  1088, 1099 (E.D. Cal. 2001).  In considering a motion to strike,

11  the court views the pleadings in the light most favorable to the

12  non-moving party.  See In re 2TheMart.com Secs. Litig., 114 F.

13  Supp. 2d 955, 965 (C.D. Cal. 2000)).

14  **III. ANALYSIS**

15      **A.   Motion to Dismiss**

16          **1.   Federal Claims**

17      First, Defendant argues that Plaintiff has failed to identify

18  any specific employee of MCH and connect that employee with

19  wrongdoing to rise to the level of a constitutional violation as is

20  required for a section 1983 claim.  (Mot. at 5.)  Further,

21  Defendant claims, even if such specific conduct were alleged, there

22  is no vicarious liability under section 1983, so the first two

23  causes of action should be dismissed.  (Id. at 5-6.)  Second,

24  Defendant challenges whether there is state action by MCH because

25  it is a private actor undertaking a civil commitment and merely

26  alleging a broad conspiracy is insufficient to state a claim.  (Id.

27  at 6-8.)

28

1   Plaintiff argues that no one, including MCH, followed the
2   proper procedures under section 5150 and that MCH has direct
3   corporate liability under section 1983 because it failed to have
4   proper policies and procedures. (Opp'n at 6-8.)  Plaintiff argues
5   that such an argument can be inferred from the Complaint, but asks
6   for leave to amend if needed.  (Id. at 9.)  Plaintiff also argues
7   that Defendant MCH is a state actor, whether directly or through
8   conspiracy.  (Id. at 9-13.)

9   Defendant's Reply argues that Plaintiff's Opposition and
10  complaint "admit[] that none of the facts necessary to plead a §
11  1983 claim have been met" because there are no allegations of a
12  formal corporate policy, a violation by someone with authority, or
13  ratification of some action, and therefore there is no corporate
14  defendant liability.  (Reply at 2.)  Defendant also argues that
15  merely pleading that Defendant was a state-contracted facility is
16  inadequate to show state action.  (Id. at 3.)  Further, Defendant
17  claims there are no specific facts pled in the complaint as to a
18  conspiracy between the LAPD and MCH.  (Id. at 4.)

19  To state a claim under section 1983, "a plaintiff must show
20  (1) that Defendants deprived him or her of a right secured by the
21  Constitution or laws of the United States and (2) that, in doing
22  so, Defendants acted under color of state law." Jensen v. Lane
23  Cnty., 222 F.3d 570, 574 (9th Cir. 2000) (internal alteration and
24  quotation omitted).  "It is established that involuntary
25  confinement or civil commitment is a significant deprivation of
26  liberty that requires due process protections." Id. (citing
27  Addington v. Texas, 441 U.S. 418, 425 (1979)).
28

1    "Liability under section 1983 arises only upon a showing of
2    personal participation by the defendant. . . . There is no
3    respondeat superior liability under section 1983." <u>Taylor v. List</u>,
4    880 F.2d 1040, 1045 (9th Cir. 1989).  However, "[w]here plaintiffs
5    have based their claim for liability directly on unconstitutional
6    policies or customs and not on the doctrine of respondeat superior,
7    it is erroneous for a district court to dismiss the individual
8    defendants." <u>Sanders v. Kennedy</u>, 794 F.2d 478, 482 (9th Cir.
9    1986); <u>see also</u> <u>Monell v. New York City Dep't Soc. Servs.</u>, 436 U.S.
10   658, 690-91 (1978).

11       Plaintiff's first two causes of action under Section 1983
12   allege violations of Plaintiff's Fourth and Fourteenth Amendment
13   rights to due process and to be free of excessive force and illegal
14   detention.  (Compl.)  In his Opposition, Plaintiff argues that no
15   one at MCH followed necessary section 5150 procedures for
16   evaluating whether there was probable cause to execute a
17   psychiatric hold on Plaintiff, which in turn violated his
18   constitutional rights.  (Opp'n at 3-6.)  Plaintiff argues that MCH
19   is directly responsible for this violation of Plaintiff's rights,
20   as is required under section 1983 law, because Plaintiff argues
21   that the hospital's policies and procedures caused Plaintiff's
22   rights to be violated.  (<u>Id.</u> at 6-7.)

23       However, as Defendant argues, there is no mention in the
24   complaint of Defendant MCH's procedures and policies.  As currently
25   pled, Plaintiff's complaint reads like it alleges vicarious
26   liability, which does not state a claim under section 1983.
27   Therefore, these two causes of action against Defendant Deanco are
28

1  dismissed for failure to state a claim, but leave to amend is

2  granted.

3       As for the claim that MCH is not a state actor, the Court

4  finds that the complaint pleads sufficient facts to demonstrate

5  that MCH is a state actor in its role of detaining individuals in

6  section 5150 psychiatric holds.  The Ninth Circuit in Jensen held a

7  private physician acting on behalf of a private hospital in

8  committing an individual for a mental health evaluation was a state

9  actor under the "close nexus/joint action test."  222 F.3d at 574-

10 76.  This was because the evaluation was initiated by government

11 workers who worked closely with the private actors and helped

12 develop and maintain the policies of the private actors.  Id. at

13 575.  Similarly here, Plaintiff has alleged a close relationship

14 between MCH and the government actors, including that Plaintiff's

15 detention was initiated by government actors who then handed

16 Plaintiff off to MCH.  According to Plaintiff, MCH has a

17 contractual relationship with the County and the City to hold

18 individuals taken into custody under section 5150.  (Compl. ¶ 47.)

19 This is sufficient to show that there is state action.

20              2.   State Claims

21                   a.   Violation of Section 5150

22      Defendant argues that Plaintiff has failed to plead sufficient

23 facts to show a violation of California's section 5150, the civil

24 commitment statute.  (Mot. at 8-9.)  Defendant claims that there

25 are very limited civil remedies for a violation of that statute,

26 and such remedies require a knowing and willful violation of the

27 act because the statute also gives immunity to healthcare

28 facilities like MCH.  (Id. at 9.)  Here, Defendant argues,

11

1  Plaintiff has merely argued that "MCH violated the LPS Act by
2  failing to provide an assessment or failing to provide a
3  psychiatrist interview," and there are no allegations in the
4  complaint that there was a knowing and willful violation of the
5  statute.  (Id. at 9-10.)

6      Plaintiff argues that the state law claims are properly pled
7  because MCH failed to follow the required section 5150 procedures,
8  which entitles Plaintiff to civil damages.  (Opp'n at 14-17.)
9  Further, Plaintiff claims his failure to identify any particular
10 individual as responsible for MCH's detaining him is not fatal to
11 his claims because MCH as a whole is responsible, and because
12 Plaintiff did name some individuals in the complaint.  (Id.)
13 According to Plaintiff, MCH and its employees were aware that there
14 was no probable cause for detaining Austen and still did so.  (Id.
15 at 20.)  Further, there is no immunity, Plaintiff argues, because
16 MCH failed to act in accordance with the section 5150 procedures.
17 (Id. at 18.)  Lastly, any exemption from liability is "narrow"
18 according to Plaintiff, and so there is still negligence liability
19 available under the statute.  (Id. at 19-20.)

20     Defendant responds that any section 5150 hold was placed on
21 Plaintiff by the LAPD, and not MCH, and so MCH cannot be held to
22 have violated the procedures of section 5150 when MCH was not the
23 party that initiated the hold and MCH had no knowledge that there
24 was a lack of probable cause for the hold.  (Reply at 5-6.)
25 Further, Defendant argues that Plaintiff still cannot show that
26 Defendant can be held liable under a civil damages remedy because
27 there is no pleading that MCH or any party on MCH's behalf acted
28 "knowingly and willfully" as the statute requires.  (Id. at 7.)

1    Relatedly, Defendant also argues that the complaint as
2    currently pled is confusing as to whether there was a section 5150
3    hold in place, and if so, who ordered the hold.  (Mot. at 10-11;
4    Reply at 5-6.)  Defendant argues that at the least, the confusion
5    must be rectified through amendment, but that if the LAPD is
6    alleged to have ordered the hold, then Defendant is immune from
7    civil suit under the statute.  (Id.)

8    A civil damages suit under the Lanterman-Petris Act, of which
9    section 5150 is a part, requires a knowing and willful violation of
10   section 5150 or the other parts of the statute governing mental
11   health commitments.  See Cal. Welf. & Inst. Code § 5259.1 ("Any
12   individual who is knowingly and willfully responsible for detaining
13   a person in violation of the provisions of this article is liable
14   to that person in civil damages.").

15   The Court finds that the Complaint as currently alleged does
16   clearly state that MCH violated section 5150 by failing to provide
17   required warnings and follow required procedures.  The Complaint
18   alleges that this was knowingly and willfully done because MCH and
19   its employees had knowledge that Plaintiff was not a danger to
20   himself or others, that there was no probable cause to detain him,
21   and that MCH failed to provide proper evaluation throughout the
22   seventy-two hour detention period.  The precise allegation of who
23   ordered the section 5150 hold is unclear, Plaintiff argues, because
24   no section 5150 hold was ever appropriate and so no proper section
25   5150 hold took place.

26   Instead, according to Plaintiff, MCH and the other Defendants
27   held Plaintiff for a psychiatric hold in a locked psychiatric unit
28   without proper cause or procedures followed under section 5150.

13

1   Therefore, based on these facts pled in the Complaint, the Court

2   finds that Plaintiff has stated a claim for MCH holding Plaintiff

3   in violation of section 5150 and that MCH did so knowingly and

4   willfully.

5       However, MCH argues that section 5259.1's civil damages

6   provision requires an "individual" to be named as the bad actor,

7   not a facility such as MCH.  Plaintiff argues this is inconsistent

8   with MCH's position regarding its immunity under section 5278,

9   which also protects "individuals."  See Cal. Welf. & Inst. Code §

10  5278.  Neither party has cited cases that would require the Court

11  to rule either way, but Defendant has not cited any cases that

12  support its proposed reading of the statute.  Plaintiff has cited

13  cases, including one where a defendant healthcare facility was not

14  granted immunity out of hand on the basis of this individual

15  language in the civil damages or immunity statutes.  See Jacobs v.

16  Grossmont Hosp., 108 Cal. App. 4th 69, 71-72 (2003).  Therefore,

17  the Court will allow the civil damages action against Defendant

18  Deanco to go forward; Defendant's motion to dismiss is denied as to

19  these claims.

20              c.    Fourth, Fifth, and Sixth Causes of Action

21      Similar to the argument above, Defendant argues that since the

22  complaint is unclear as to who ordered the section 5150 hold,

23  Plaintiff's allegations that stem from the ordering of that hold

24  without probable cause cannot be alleged against Defendant, who did

25  not order the section 5150 hold but was instead following the

26  LAPD's orders.  (Mot. at 11.)  Thus, Defendant argues, because the

27  factual underpinnings for false imprisonment and negligent and

28  intentional infliction of emotional distress were caused by other

1  defendants, these claims should be dismissed as to MCH.  (Id. at
2  11-12.)

3      Plaintiff argues that his fourth, fifth, and sixth causes of
4  actions are adequately pled.  (Opp'n at 20.)  He claims that
5  because he was held without probable cause — and because MCH knew
6  there was no probable cause — there is a legal basis for these
7  causes of action, regardless of who or whether a section 5150
8  evaluation and report was completed.  (Id.)

9      As discussed above, the Court finds that Plaintiff has
10 sufficiently pled a violation of section 5150; thus, the state law
11 causes of action relying upon such a violation are also
12 sufficiently pled because they rest on the same factual
13 allegations.  Therefore, the motion to dismiss these causes of
14 action is denied.

15                    **d.   False Light**

16     Defendant argues that the cause of action for invasion of
17 privacy and false light should be dismissed because there was no
18 publication of false information by Defendant, as all the relevant
19 conduct alleged in the Complaint took place before Plaintiff was a
20 patient at MCH.  (Mot. at 12.)

21     Plaintiff responds that his arrest and detention "threatens
22 Plaintiff's appearance to the public" because, for example,
23 Plaintiff will be unable to own a gun in some states if he has been
24 detained for mental health reasons recently.  (Opp'n at 21.)
25 However, Plaintiff concedes that he has "no intent to purchase a
26 gun."  (Id.)

27     Defendant's Reply points out that Plaintiff's position does
28 not change the fact that there must be some connection between this

                              15

1   specific Defendant's conduct and the alleged misconduct, which here

2   has to be publication of a false statement about Plaintiff. (Reply

3   at 7-8.)

4      California courts have explained the tort of false light as "a

5   species of invasion of privacy, based on publicity that places

6   plaintiff before the public in a false light that would be highly

7   offensive to a reasonable person, and where the defendant knew or

8   acted in reckless disregard as to the falsity of the publicized

9   matter and the false light in which the plaintiff would be placed."

10   <u>Price v. Operating Eng'rs Local Union No. 3</u>, 195 Cal. App. 4th 962,

11   970 (2011) (citing Rest. 2d Torts § 652E).

12      Plaintiff's arrest and initial detention were alleged to be

13   done by the LAPD officers outside Plaintiff's home, in the presence

14   of his neighbors. These actions were not taken by Defendant

15   Deanco, and so Deanco cannot be held liable for those actions.

16   Further, it is unclear if publication is alleged in the complaint,

17   and the argument regarding gun ownership Plaintiff brings in

18   Opposition is inapposite. Therefore, there appears to be no facts

19   alleged against Defendant Deanco that support the false light cause

20   of action, so it is dismissed with leave to amend.

21   **B.   Motion to Strike**

22      Defendant has also moved the Court to strike specific language

23   from the complaint. (Notice of Mot. Strike, dkt. No. 18, at 2-3.)

24   Primarily, Defendant wants the Court to strike all allegations for

25   punitive damages and attorneys fees against it. (Mot. Strike, dkt.

26   no. 18-1, at 4, 7.) Defendant argues that there is no legal basis

27   for these claims of relief and the facts pled in the Complaint do

28   not support the imposition of these forms of relief. (<u>Id.</u>)

1    Plaintiff responds that this motion is premature at this stage
2  of the case and confusing because there are multiple defendants
3  with different potential liabilities.  (Opp'n, dkt. no. 23, at 2-
4  3.)
5    Defendant's Reply argues that the motion was timely filed and
6  that there are no facts pled that would support punitive damages or
7  attorneys' fees and so this motion is appropriate, at least as to
8  Defendant Deanco.  (Reply at 2-3.)  Defendant argues that the fact
9  that there are multiple defendants in the case only supports the
10  point that the complaint must be clear as to the allegations
11  against each of them.  (Id. at 5-6.)
12    Plaintiff's Complaint alleges facts that support the
13  imposition of punitive damages because he alleges actions by MCH
14  that would show "oppression, fraud, or malice."  See Cal. Civ. Code
15  § 3294(a).  However, Defendant argues that Plaintiff seeks punitive
16  damages against it, the employer, based on actions of MCH
17  employees, but that Plaintiff has not pled facts necessary to
18  support the imposition of punitive damages against an employer for
19  an employee's actions under section 3294(b).
20    Similar to the section 1983 problems described above, the
21  Court agrees that Plaintiff has not sufficiently pled facts showing
22  that the particular Defendant — Deanco, d/b/a MCH — has acted as to
23  incur the possibility of punitive damages.  Based on the
24  requirements of the statute, Plaintiff must plead that:
25        the employer had advance knowledge of the unfitness of the
          employee and employed him or her with conscious disregard
26        of the rights or safety of others or authorized or ratified
          the wrongful conduct for which the damages are awarded or
27        was personally guilty of oppression, fraud, or malice.
          With respect to a corporate employer, the advance knowledge
28        and conscious disregard, authorization, ratification or act

17

of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Id. § 3294(b).   Therefore, Defendant's motion to strike is granted as the punitive damages against Defendant Deanco, but Plaintiff has leave to amend his complaint as to allege the necessary facts.

Plaintiff's prayer for attorneys' fees against Defendant Deanco can remain if Plaintiff amends his section 1983 claims because section 1983 claims would entitle Plaintiff to attorneys' fees.   Other causes of action may also entitle Plaintiff to attorneys' fees, but the Court does not rule on that ground because Plaintiff did not raise them in his Opposition.   Thus, the attorneys' fees prayer is stricken from the Complaint as to Defendant Deanco, but leave to amend is granted.

**IV.   CONCLUSION**

For all the reasons listed above, the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss and Defendant's Motion to Strike.   Plaintiff has fourteen days from the date of this Order to amend his complaint.


IT IS SO ORDERED.



Dated: February 4, 2016

DEAN D. PREGERSON

United States District Judge

18