O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD AUSTEN, ) | Case No. 15-07372 DDP (FFM) |
| ) | |
| Plaintiff, ) | **ORDER GRANTING IN PART AND** |
| ) | **DENYING IN PART PLAINTIFF'S** |
| v. ) | **MOTION FOR LEAVE TO FILE** |
| ) | **SECOND AMENDED COMPLAINT** |
| COUNTY OF LOS ANGELES, et al., ) | |
| ) | [Dkt. 66] |
| Defendants. ) | |
| ) | |

Presently before the court is Plaintiff Donald Austen's Motion for Leave to File a Second Amended Complaint. Having considered the parties' submissions and heard oral argument, the court DENIES the Motion and adopts the following Order.

**I. BACKGROUND**

Plaintiff Donald Austen is the president and founder of the non-profit Thursday's Child, an organization dedicated to serving youth populations. (First Amended Complaint ("FAC") ¶ 1-2.) On February 2, Austen contacted the Los Angeles County Department of Public Social Services (DPSS) to inquire about mental health grants for

Thursday's Child. (*Id.* ¶ 17.) The next day, Austen and Jessica Cruz, an employee of the Mental Health Services division of DPSS spoke by phone. (*Id.* ¶ 18.) The parties dispute the specific details of the conversation but, after the interaction, it is undisputed the Cruz called 911. Cruz informed the 911 operator that Austen had purportedly made suicidal statements and threats towards others, including Ms. Cruz and the police. (*Id.* ¶ 25.) Austen denies making any of these statements. (*Id.* ¶ 26.) In response to the call, the Los Angeles Police Department dispatched officers to Plaintiff's house. (*Id.* ¶ 32.) One of the units sent was a team focused on mental health responses and was comprised of Officer Alfredo Morales and his partner, Sandra Holguin, a registered psychiatric nurse employed by the Los Angeles County Department of Mental Health. (*Id.* ¶ 38.) After an encounter with Plaintiff at his residence, Morales and Holguin took Plaintiff into custody to perform a psychiatric evaluation. (*Id.* ¶¶ 36-42.) Plaintiff was then detained under Welfare and Institutions Code Section 5150, which provides that

> [w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff . . . or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

Cal. Welf. & Inst. Code § 5150(a). After that, Plaintiff was transferred to Mission Community Hospital (MCH) where he was held for evaluation and observation for seventy-two hours. Plaintiff's care was supervised by Dr. Hassan Farrag and Plaintiff was ultimately released on February 7, 2015. (*Id.* ¶ 59.)

Plaintiff brought suit alleging that his detention was not justified by probable cause, as required by section 5150. Plaintiff's First Amended Complaint asserted eleven causes of action against the County of Los Angeles, Jessica Cruz, Sandra Holguin (the "County Defendants"), City of Los Angeles, Los Angeles Police Department, Alfredo Morales (the "City Defendants"), and Denaco Healthcare (d/b/a MCH). Plaintiff alleges, *inter alia*, violations of his Fourth and Fourteenth Amendment Rights under 42 U.S.C. §

2

1983, multiple violations of WIC § 5150, false arrest and imprisonment, negligent and intentional infliction of emotional distress, and invasion of privacy. (*See* FAC.) The gravamen of Plaintiff's case is that Cruz intentionally made false statements to the police so that Plaintiff would be detained under section 5150, and that the officers, nurses, and doctors who interacted with Plaintiff during this incident failed to meet their various obligations by giving undue weight to Cruz's statements while ignoring their own observations that Plaintiff presented no threat to himself or others.

In the FAC, Plaintiff makes a number of references to individual defendants acting in accordance with the "policies and practices" of their respective departments. (*See* FAC ¶¶ 22, 24, 26, 31, 71 (alleging that Cruz's initial decision to call the police was in accordance with County policies and practice); *id.* ¶ 47 (alleging that Officer Morales made the decision to detain Plaintiff following police practices and polices); *id.* ¶¶ 49, 54, 58 (alleging that MCH's admittance and evaluation of Plaintiff was conducted in accordance with policies and practices).) Plaintiff also names several municipal defendants in the FAC. Plaintiff does not, however, expressly articulate a claim for municipal liability or invoke *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978), in the FAC.

On April 12, 2016, the court issued a Scheduling Order setting the fact discovery cut-off date on November 30, 2016 and the motions deadline on February 28, 2017. Pursuant to the parties' stipulation, the discovery cut-off was extended to February 10, 2017. (*See* Dkts. 52, 53.) On February 27, 2017, the City Defendants, County Defendants, and MCH, each filed motions for summary judgment. On February 28, the motions deadline, Plaintiff filed the instant Motion for Leave to File a Second Amended Complaint ("SAC"). Plaintiff brings this motion in order to clarify the factual bases of a *Monell* claim and to expressly allege *Monell* liability under his section 1983 claim.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint by leave of the court at any time, and provides that such leave "shall be freely given when

justice so requires." Fed. R. Civ. P. 15(a). Denial of leave is within the court's discretion. In deciding whether to grant leave to amend, the court may consider undue delay, prejudice to the opposing party, bad faith or dilatory motive, futility of the amendment, and whether the party has previously amended its pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Although these factors are ordinarily applied with a view toward "the strong policy in favor of allowing amendment," *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), this preference is circumscribed where leave to amend is sought after the close of discovery and the filing of summary judgment motions. *See Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (stating that the "timing of the motion [for leave to amend], [filed] after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave") *abrogated on other grounds Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001).

**III. DISCUSSION**

Plaintiff seeks to file a SAC in order to "clarify his claim under *Monell*." *(See* Mot. 2.) Specifically, Plaintiff contends that information elicited during the depositions of Officer Alfredo Morales, Nurse Sandra Holguin, Dr. Hassan Farrag, MCH's 30(b)(6) Renee Ruiz, and Jessica Cruz, reveal that Plaintiff was deprived of his constitutional rights as a result of municipal policies, practices, or customs. (Mot. 1-2.) Plaintiff explains that he was not able to amend his complaint at an earlier date because the depositions that clarified these claims were completed between January 26, 2017 and February 16, 2017. Further, Plaintiff contends that there is no prejudice to Defendants because the SAC only supplements the factual allegations of the FAC and does not add any new parties or causes of action. (Mot. 5-6.)

Defendants respond that Plaintiff's proposed amendments are futile because, even with the additional factual allegations, the complaint would fail to state a *Monell* claim. Defendants also contend that the timing of the motion is highly prejudicial and an impermissible attempt to circumvent Defendants' timely filed summary judgment

4

motions. Were the court to grant leave to amend, Defendants explain that they would need to seek leave to modify the scheduling order and file new summary judgment motions. Defendants argue that this would create substantial expense and duplication of effort, which they should not be forced to incur in light Plaintiff's undue delay in seeking leave to amend on the last day of the motions deadline.

**A. Futility of Amendment**

Beginning with the issue of futility, a proposed amendment is futile if no set of facts can be proved under the amendment, which would constitute a valid claim. *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *M.H. v. Cty. of Alameda*, No. 11-2868 CW, 2012 WL 5835732, at *2 (N.D. Cal. Nov. 16, 2012) (holding that amendment is futile "if it fails to state a valid claim under Rule 12(b)(6)"). Here, Plaintiff seeks leave to amend his FAC to clarify his *Monell* allegations. Although Plaintiff maintains that the FAC impliedly asserts *Monell* liability by alleging that Defendants were acting pursuant to municipal policies and practices, Plaintiff contends that the opportunity to file a SAC would clarify the precise bases of such a claim in light of recently discovered information.

In order to state a claim for municipal liability against an entity defendant, a plaintiff must allege that the entity itself caused the violation through a constitutionally deficient policy, practice or custom. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In light of *Iqbal*, bare allegations are no longer sufficient to state a claim for municipal liability. Instead, a plaintiff must identify the training or hiring practices and policies that she alleges are deficient, explain how such policy or practice was deficient, and explain how such a deficiency caused harm to the plaintiff. *Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149–50 (E.D.Cal.2009). In other words, a plaintiff must allege "specific facts giving rise to a plausible *Monell* claim" instead of "formulaic recitations of the existence of unlawful policies, customs, or habits." *Warner v. County of San Diego*, 2011 WL 662993 (S.D.Cal.2011).

1. Policy or Practice of Ignoring Personal Observations

The primary basis of Plaintiff's *Monell* amendment is that newly discovered evidence reveals municipal policies that allegedly encourage employees "to ignore their own personal visual and auditory observations in making a determination on a section 5150 hold." (SAC ¶¶ 96-98.) As to the City, Plaintiff notes that Officer Morales stated during his deposition that he did not personally hear Plaintiff make suicidal remarks or observe Plaintiff act in a way that was dangerous. (Waldron Decl., Ex. B [Morales Depo.] 13:20-23, 71:5-7.) According to Plaintiff, this statement combined with Officer Morales's affirmation that he "follow[ed] all of the policies and procedures of the Los Angeles Police Department" when detaining Plaintiff demonstrates that the city had a policy of encouraging officers to ignore their personal observations when making a probable cause determination pursuant to section 5150. (Morales Depo. 5:14-23.) Plaintiff presents a similar claim with regard to the County. Specifically, he notes that Nurse Holguin, the nurse who responded to the emergency call with Officer Morales, also affirmed during her deposition that she was acting pursuant to municipal policies and procedures. Given Plaintiff's contention that there was no probable cause for his detention, he argues that Holguin's generic affirmation is adequate to state a *Monell* claim against the County.[1] Finally, Plaintiff makes an analogous allegation against MCH. Specifically, he notes that that admitting physician stated that Plaintiff appeared "intact" and "denied suicidal or homicidal ideation." (Waldron Decl., Ex. D [Farrag Depo.] 41:22-42:14.) This along with the doctor's admission that he was acting in accordance with MCH policies and practices, (Farrag Depo. 20:11-21:2,) provides the basis for his claims against MCH.

---

[1] Plaintiff also states that his claims against the County are based on Jessica Cruz's statement that she placed Plaintiff on hold for an extended period of time, which Plaintiff contends would be an inappropriate policy if he was genuinely expressing suicidal ideation. This point is irrelevant given that Plaintiff is not contending he was a person who needed mental health help but was not assisted quickly enough by the County. Indeed, Plaintiff's own theory of the case is that he never actually made suicidal statements on the phone to Jessica Cruz so being placed on hold would seem acceptable.

The statements Plaintiff intends to introduce in the SAC in order to state claim under *Monell* that municipal Defendants had a policy of encouraging employees to ignore their own personal observations do not justify granting leave to amend the complaint. As an initial matter, Plaintiff fails to allege facts substantiating his claims that the City, County, or MCH has adopted a policy or practice that deviates from the "well settled" law governing probable cause determinations for detention under section 5150. *Palter v. City of Garden Grove*, 237 F. App'x 170, 171 (9th Cir. 2007). Moreover, to the extent that Plaintiff takes issue with the decision of municipal employees to consider factors beyond their personal observation, this is not contrary to law. The probable cause determination under section 5150 asks if an officer has knowledge of facts "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *People v. Triplett*, 144 Cal. App. 3d 283 (1983). To justify the detention, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." *Id*. at 541. "Each case must be decided on the facts and circumstances presented to the officer at the time of the detention and the officer is justified in taking into account the past conduct, character, and reputation of the detainee." *Id*. The law does not limit an officer to only his or her personal observations. While a policy that precludes officers from considering their personal observations might run afoul of this totality of the circumstances evaluation, none of the additional depositions Plaintiff relies upon indicate a municipal policy that directs officers to ignore their personal observations in favor of other information. To the contrary, Officer Morales explains during his deposition that he took into account his personal observations, including his observation that Plaintiff was initially reluctant to exit his home, the information relayed to him by the emergency dispatcher about statements Plaintiff purportedly made, and his experience that individuals experiencing mental health crises often deny those crises when they interact with police officers when making his probable cause determination. Whether or not this amounts to probable

7

cause, these statements do not demonstrate any City policy that requires officers to ignore their personal observations.

Likewise, the admitting physician at MCH made similar comments about needing to keep Plaintiff for additional observation due to conflicting accounts about Plaintiff's mental health condition. (Farrag Depo. 59:6-17.) Dr. Farrag acknowledged that plaintiff denied harmful ideation but he also stated that he took into account the officer's evaluation that a 5150 hold was justified, the earlier comments purportedly made by Plaintiff to Cruz, and his understanding that Plaintiff had presented conflicting accounts of certain other personal circumstances to the MCH medical staff, all of which led him to conclude that he "needed to continue in the 72-hour hold for more information gathering." (*Id*. at 59:25-60:11). As with the initial detention decision, there may be a claim about whether Plaintiff's continued detention at MCH was justified but the statements relied on from the deposition do not demonstrate the existence of a municipal policy that requires doctors to "ignore" their personal observations.

Ultimately, Plaintiff's theory of municipal liability essentially boils down to the circular contention that where there is an alleged constitution deprivation during an interaction with municipal employees, and where those employees generally believe that they acted in accordance with policies and practices, there must be an unconstitutional municipal policy or practice in place. This argument is unavailing for a number of reasons. First, this sort of allegation lacks the specificity required under *Monell* about the particular policy or practice that led to a specific constitutional deprivation. An employee's subjective belief that they generally acted in accordance with "policies and practices" cannot cure this defect because it does not indicate whether there was actually a relevant policy in place. Moreover, even if Plaintiff is able to ultimately show a constitutional deprivation in his individual case, the allegations in the SAC do not show a longstanding custom, policy, or practice of ignoring personal observations when making section 5150 decisions. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding that liability for improper custom "may not be predicated on isolated or

8

sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). Given the futility of this claim, the court denies the motion for leave to amend to the extent that it seeks to add factual allegations or *Monell* claims against City and County Defendants. *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir.1991) (affirming district court's order denying motion for leave to amend on grounds of futility of alone).

### 2. MCH's Policy or Practice Regarding In-Person Assessments

Plaintiff also seeks leave to amend the FAC in order to state an additional theory of *Monell* liability against Defendant MCH. Specifically, Plaintiff contends that MCH's policies for handling section 5150 hold applications are inconsistent with the legal requirement that an individual be afforded an in-person assessment prior to a seventy-two hour admission for evaluation and treatment.[2] According to Plaintiff, MCH never provided him an in-person assessment in order to determine the appropriateness of his involuntary detention. (SAC ¶¶ 62-64.) Furthermore, Plaintiff contends that this failure was a result of MCH policies or practices that only require the admitting employee to perform a clerical review of a 5150 application rather than their own in-person assessment regarding the appropriateness of involuntary detention at the time of admission. (*See* Reply 5-6.)

MCH responds that this specific amendment is also futile because its policies are consistent with the requirement of sections 5150 and 5151. (Deanco Opp'n 4.) MCH

---

[2] The requirement for in-persons assessments is articulated in two provisions. First, section 5150(c) provides that
> [t]he professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, or professional person designated by the county shall assess the person to determine whether he or she can be properly served without being detained. If, in the judgment of the professional person in charge . . . the person can be properly served without being detained, he or she shall be provided evaluation, crisis intervention, or other inpatient or outpatient services on a voluntary basis.

Welf. & Inst. Code § 5150(c). Second, section 5151 requires that "prior to admitting a person to the facility for treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall assess the individual in person to determine the appropriateness of the involuntary detention." *Id*. § 5151.

9

acknowledges that the admitting nurse is responsible for ensuring that a 5151 application is properly filled out (i.e., that date and times are indicated, that the form is signed, etc.) but contends that the admitting nurse in this case also performed a mental health assessment. (*Id.* 4-5.) Although the evidence indicates that some assessment was conducted at 11:53 PM on the night Plaintiff was brought to the hospital by LAPD, there is no indication that this was specifically an assessment to determine the appropriateness of involuntary detention. Moreover, there is inadequate information before the court to properly determine whether that assessment comported with the requirements of section 5151. Based on Plaintiff's allegations and the testimony of MCH's 30(b)(6) witness, there is a non-futile *Monell* claim that Plaintiff's alleged constitutional deprivations were caused by an MCH policy or practice to not afford patients who are admitted pursuant to a section 5150 application an in person assessments in order to determine the appropriateness of involuntary detention. (*See* SAC ¶ 98.)

**B. Undue Delay and Prejudice to Defendants**

In addition to the futility of the amendment, courts also consider undue delay and prejudice to Defendants when determining whether to grant leave to amend a complaint. Beginning with undue delay, Plaintiff contends that the specific factual allegations that give rise to the SAC could not have been discovered until the final depositions were completed in January and February of 2017. (Mot. 1-2.) However, the specific allegations that Plaintiff intends to introduce regarding an alleged policy of ignoring personal observations—boilerplate assertions that the individual defendants acted in accordance with "policies and practices"—are ones that could have been made in advance of the relevant depositions. Reviewing Plaintiff's motion, the evidence that forms the primary basis of this claim appears to be the admission by various individual defendants that they believed they were acting in accordance with applicable "policies and practices." To the extent that this is the linchpin of Plaintiff's *Monell* claim against the City and County Defendants, he could have sought this general acknowledgment through timely Requests for Admission or other earlier discovery.

The court does not find, however, that there was undue delay on Plaintiff's part in raising the allegation that MCH has a policy of not providing in-person assessments in order to determine the appropriateness of involuntary detentions when dealing with section 5150 applications. First, MCH never argues there was undue delay with regards to this particular allegation. Moreover, it was only after Plaintiff deposed MCH's 30(b)(6) that he was able to determine that the admitting nurse might only review a 5150 application for clerical issues rather than conduct his or her own in-person assessment about the appropriateness of involuntary detention.

In addition to undue delay, Defendants contend that the timing of motion creates a case for prejudice. Specifically, Defendants note that the instant motion was filed after the close of discovery and on the very last day of the motions cut-off. Defendants also note that granting Plaintiff's motion would require vacating the pending summary judgment motions and modifying the scheduling order. While these are relevant considerations, the court finds that granting Plaintiff leave to amend would only cause limited prejudice to Defendants. First, the leave to amend is for the narrow purpose of adding a claim for *Monell* liability against Defendant MCH on the grounds that MCH has a policy or practice of not requiring in-person assessments to determine the appropriateness of involuntary detention. Thus, only MCH would have any need to update the arguments presented in the pending summary judgment motions. By contrast, there is no need for the City and County Defendants to undertake additional efforts beyond refiling their summary judgment motions, as the court is not permitting the addition of any new claims or factual allegations against those Defendants. Moreover, the court recently granted a stipulation by the parties to continue trial from May 30, 2017 until March 27, 2018. (Dkt. 105.) Thus, to the extent that there are ultimately triable issue of fact, granting leave to amend would not affect when the parties are able to present their cases to the jury.

**IV. CONCLUSION**

For the reasons stated above, the court GRANTS in part and DENIES in part Plaintiff's Motion for Leave to File a Second Amended Complaint. The court grants Plaintiff leave to file a Second Amended Complaint for the sole purpose of alleging a claim for *Monell* liability against Defendant MCH on the ground specified in this Order. The SAC shall be filed no later than April 17, 2017. In addition to the SAC, Plaintiff shall submit a redline version of the complaint indicating all changes that were made between the First and Second Amended Complaints. Any revisions that are beyond what is permitted by this Order shall be stricken. Furthermore, the court VACATES all pending summary judgment motions. (*See* Dkts. 64, 65, 69.) In light of this Order, the court also modifies the Scheduling Order and continues the last day to file motions to June 19, 2017.

**IT IS SO ORDERED.**

Dated: April 13, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE