O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD AUSTEN, | ) | Case No. 15-07372 DDP (FFMx) |
| | ) | |
| Plaintiff, | ) | **ORDER RE: DEFENDANT DEANCO** |
| | ) | **HEALTHCARE'S MOTION TO** |
| v. | ) | **STRIKE AND MOTION TO DISMISS** |
| | ) | |
| COUNTY OF LOS ANGELES, et al., | ) | [Dkt. Nos. 120 and 121] |
| | ) | |
| Defendants. | ) | |
| | ) | |

Presently before the court is Defendant Deanco Healthcare, LLC, d/b/a Mission Community Hospital ("MCH")'s Motion to Strike portions of Plaintiff Donald Austen's Third Amended Complaint ("TAC") pursuant to Rule 12(f) and Motion to Dismiss *Monell* claims in the first and second causes of action in the TAC pursuant to Rule 12(b)(6). Having considered the parties' submissions, the court adopts the following Order.

**I. BACKGROUND**

Plaintiff Donald Austen is the president and founder of the non-profit Thursday's Child, a "national charity for endangered children." (TAC ¶ 3.) On February 2, Austen

contacted the Los Angeles County Department of Public Social Services ("DPSS") to inquire about mental health grants for Thursday's Child. (*Id.* ¶ 18.) The next day, Austen and Jessica Cruz, an employee of the Mental Health Services division of DPSS spoke by phone. (*Id.* ¶ 19.) Although the parties dispute the specific details of the conversation, they do not dispute that Cruz called 911 afterwards. (*Id.* ¶ 25.) Cruz informed the 911 operator that Austen had purportedly made suicidal statements and threats towards others, including Ms. Cruz and the police. (*Id.* ¶¶ 27-32.) Austen denies making any of these statements. (*Id.*) In response to the call, the Los Angeles Police Department dispatched officers to Plaintiff's house. (*Id.* ¶¶ 33-34.) One of the units sent was a team focused on mental health responses and was comprised of Officer Alfredo Morales and his partner, Sandra Holguin, a registered psychiatric nurse employed by the Los Angeles County Department of Mental Health. (*Id.* ¶ 38.) After an encounter with Plaintiff at his residence, Morales and Holguin took Plaintiff into custody to perform a psychiatric evaluation. (*Id.* ¶¶ 38-44.) Plaintiff was then detained under Welfare and Institutions Code Section 5150, which provides that

> [w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff . . . or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

Cal. Welf. & Inst. Code § 5150(a). Plaintiff was then transferred to Mission Community Hospital where he was held for seventy-two hours for evaluation and observation. Plaintiff's care was handled by Dr. Hassan Farrag and Plaintiff was ultimately released on February 7, 2015. (*Id.* ¶¶ 44, 60-62, 87.)

Plaintiff brought suit alleging that his detention was not justified by probable cause, as required by section 5150. Plaintiff's First Amended Complaint ("FAC") asserted eleven causes of action against the County of Los Angeles, Jessica Cruz, and Sandra Holguin (the "County Defendants"); City of Los Angeles, Los Angeles Police

2

Department, and Alfredo Morales (the "City Defendants"); and Denaco Healthcare (d/b/a MCH). Plaintiff alleges, *inter alia*, violations of his Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983, multiple violations of WIC § 5150, false arrest and imprisonment, negligent and intentional infliction of emotional distress, and invasion of privacy. (*See* FAC.) The gravamen of Plaintiff's case is that Cruz intentionally made false statements to the police so that Plaintiff would be detained under section 5150, and that the officers, nurses, and doctors who interacted with Plaintiff during this incident failed to meet their various obligations by giving undue weight to Cruz's statements while ignoring their own observations that Plaintiff presented no threat to himself or others.

In the FAC, Plaintiff makes a number of references to individual defendants acting in accordance with the "policies and practices" of their respective departments. (*See* FAC ¶¶ 22, 24, 26, 31, 71 (alleging that Cruz's initial decision to call the police was in accordance with County policies and practice); *id.* ¶ 47 (alleging that Officer Morales followed police practices and polices when deciding whether to detain Plaintiff); *id.* ¶¶ 49, 54, 58 (alleging that MCH's admittance and evaluation of Plaintiff was conducted in accordance with policies and practices).) Plaintiff also names several municipal defendants in the FAC. Plaintiff does not, however, expressly articulate a claim for municipal liability or invoke *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978), in the FAC.

On February 28, 2017, Plaintiff moved for leave to file a Second Amended Complaint to specifically allege *Monell* claims. The court granted the motion in part, allowing Plaintiff "to file a Second Amended Complaint for the sole purpose of alleging a claim for *Monell* liability against Defendant MCH on the ground specified in this Order." (Dkt. 107 at 12.) That ground, as explained in the Order, was the contention that "MCH's policies for handling section 5150 hold applications are inconsistent with the legal requirement that an individual be afforded an in-person assessment prior to a seventy-two hour admission for evaluation and treatment." (*Id.* at 9.) Plaintiff was not granted leave to add *Monell* claims against other City and County Defendants.

On April 17, 2017, Plaintiff timely filed a Second Amended Complaint. (Dkt. 111.) Counsel for Plaintiff and MCH then engaged in a telephonic meet and confer where they discussed the possibility of MCH filing a motion to dismiss the *Monell* claims. (Def. MCH Mot. Strike ("MTS") at 7; Pl. Opp'n Mot. Strike (MTS Opp'n) at 1.) Rather than file an unnecessary motion, the parties stipulated to allow Plaintiff to file "a Third Amended Complaint on or before May 8, 2017, so as to plead a *Monell* claim against MCH." (Dkt. 116.) The court approved the stipulation, and Plaintiff filed the instant Third Amended Complaint. (Dkts. 117, 118.)

Defendant MCH now moves to strike specific portions of the TAC and to dismiss Plaintiff's *Monell* claims against MCH in the first and second causes of action of the TAC.

**II. LEGAL STANDARD**

    **A. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), the "Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial matter is that which has no bearing on the claims for relief or the defenses being pled. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Impertinent matter consists of statements that do not pertain and are not necessary to the issues in question. *Id.* The court has the discretion to strike an entire pleading or portions thereof. *MGA Entm't, Inc. v. Mattel, Inc.*, No. CV 05-2727 NM (RNBx), 2005 WL 5894689, at *4 (C.D. Cal. Aug. 26, 2005). Generally, motions to strike are "disfavored," and "courts are reluctant to determine disputed or substantial questions of law on a motion to strike." *Whittlestone*, 618 F.3d at 1165-66; *see also Miller v. Fuhu, Inc.*, No. 2:14-cv-06119-CAS (ASx), 2014 WL 4748299, at *1, (C.D. Cal. Sept. 22, 2014). In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party. *See In re 2TheMart.com Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994).

**B. Motion to Dismiss**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id*. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id*. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 679. Plaintiff must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**III. DISCUSSION**

**A. Motion to Strike**

Defendant MCH moves to strike thirty-nine paragraphs, or portions of paragraphs, of the TAC. MCH's primary contention is that the contested paragraphs introduce allegations that go beyond the scope of amendment allowed by both this Court's April 13 Order granting leave to file a Second Amended Complaint and the parties' subsequent May 1 Stipulation for leave to file a Third Amended Complaint.

(MTS at 1-2.)[1] Specifically, the Motion asserts that the allegations at issue are irrelevant to stating a *Monell* claim against MCH. MCH also argues that the paragraphs must be stricken because they are variously immaterial, impertinent, or scandalous. (*Id.*) The court considers each of these contested paragraphs in turn, grouping allegations where the objections are related.

1. (a) Paragraph 1, lines 4-9; (b) Paragraph 2, lines 23-26

MCH objects to portions of the first two paragraphs because they do not contain any factual allegations and because they are irrelevant to the *Monell* claims against MCH. Plaintiffs respond that the allegation in Paragraph 1 is one of several paragraphs that establish "[e]veryone (including non-professionals) who encountered Plaintiff in person did not objectively see or hear anything from Plaintiff to suggest he was mentally disordered or a danger to himself or others." (MTS Opp'n 4.) The opposition is silent as to Paragraph 2. In order to state a *Monell* claim against MCH, Plaintiff must allege, *inter alia*, what specific policies and practices MCH had in place for addressing individuals who are admitted as section 5150 holds; whether MCH acted in accordance with those policies and practices with regards to Plaintiff; and how MCH is responsible for Plaintiff's alleged constitutional deprivation. Subjective assertions that Plaintiff appeared normal to those who encountered him are both immaterial to stating this claim and redundant to later more specific allegations about Plaintiff's interactions with the various Defendants. Accordingly, the court shall STRIKE these lines.

2. (a) Paragraph 47, lines 10-18; (b) Paragraph 52, lines 20-24; (c) Paragraph 53, page 14, line 25 – page 15, line 2

These lines pertain to information that Nurse Holguin and Officer Morales included in their section 5150(e) Application. MCH objects to these lines as "assail[ing]

---

[1] Under Rule 15, a party may amend its pleading either "with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a)(2). Given that the May 1 Stipulation, which generally permits Plaintiff to state a *Monell* claim against MCH, is broader than the court's April 13 Order, which limited Plaintiff to stating a *Monell* claim against MCH on only the grounds specified in that Order, the court will primarily consider whether the allegations exceed the scope of the May 1 Stipulation.

the propriety of the Application" and immaterial to whether MCH provided an in-person assessment. The court shall not strike these lines because the hold application is one of the pieces of information that MCH reviews when admitting a section 5150 patient. Thus, the specific contents of the application may have some bearing on understanding the hospital's policies.

3. (a) Paragraph 48, page 12, line 19 – page 13, line 10; (b) Paragraph 49, line 11-26; (c) Paragraph 50, page 13, line 27 – page 14, line 6; (d) Paragraph 51, line 7-9

These lines contain allegations about the conduct of Nurse Holguin and Officer Morales when they first encountered Plaintiff, recite the legal standards that might apply to their initial evaluation, and recount their subjective understanding of their responsibilities during the initial encounter. While the specific written Application that Holguin and Morales submitted to MCH may have some bearing on the *Monell* claim against MCH, Holguin and Morales' actions during the initial encounter with Plaintiff and their subjective appraisal of their responsibilities are immaterial to whether MCH maintains policies and practice that led to Plaintiff's alleged constitutional violations. Accordingly, the court shall STRIKE these lines.

4. (a) Paragraph 55, lines 12-14; (b) Paragraph 56, lines 15-22; (c) Paragraph 57, lines 23-28

These three paragraphs primarily consist of quotes from potentially applicable provisions of section 5150 and citations to other provisions of the Lanterman-Petris-Short Act. Defendant objects to these paragraphs because they do not expressly set forth an "in person assessment" requirement and assert legal conclusions. MCH also contends that citations to section 5150 in particular are immaterial because section 5151 governs a receiving hospital's responsibilities. The court will not strike these provisions. First, whether or not these statutory sections set forth an in person assessment requirement, the overall statutory scheme may provide material context for Plaintiff's general contention that MCH's policies are inconsistent with applicable law and thus led to Plaintiff's constitutional deprivation. Second, while conclusory legal allegations may not be adequate to survive a motion to dismiss after the Supreme Court's decision in *Twombly*,

7

*see* 550 U.S. at 544, that is not reason alone to strike these allegations. Indeed, barring a showing that the allegations are redundant, immaterial, impertinent, or scandalous, courts typically decline to strike even conclusory legal arguments barring some prejudice to the defendant. *See Pain Prevention Lab, Inc. v. Elect. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1490 (N.D. Ill. 1987); *see also Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806 MMM (EX), 2015 WL 11072179, at * 17 (C.D. Cal. Oct. 28, 2015). Given that there is no assertion of prejudice and that the legal conclusions do not run afoul of Rule 12(f), the court will allow these lines.

     5.  (a) Paragraph 60, page 16, line 18 – page 17, line 2; (b) Paragraph 61, lines 3-6; (c) Paragraph 62, lines 7-26

These paragraphs pertain to allegations about Dr. Farrag's interactions with Plaintiff during his time at MCH and Dr. Farrag's understanding of MCH's policies pertaining to section 5150 hold candidates. MCH moves to strike these paragraphs as irrelevant because "Dr. Farrag is not an agent or an employee of MCH" and thus his acts or omissions cannot be imputed to MCH. Although the precise relationship between Dr. Farrag and MCH may be a point of dispute, there is no question that Plaintiff was examined by Dr. Farrag while he was detained at MCH. Accordingly, allegations about Dr. Farrag's conduct—including his examination of Plaintiff and how he understood his duties—may be material to understanding MCH's general policies and practices. It may be the case that Dr. Farrag's conduct cannot be imputed to MCH, but Defendant's assertion to that effect at this stage of the proceedings is not a valid basis for striking the allegations. Accordingly, the court will not strike these paragraphs.

     6.  Paragraph 64, lines 6-16

This paragraph addresses the conduct of the charge nurse when Plaintiff was first brought to MCH, as well as an allegation that MCH "collaborated and conspired with the applicable municipal agency involved" by allegedly accepting Holguin and Morales' representations. MCH moves to strike this allegation on the ground that asserting "collusion and conspiracy" between MCH and co-defendants goes beyond alleging *Monell* liability. The bulk of this paragraph, however, pertains to MCH's conduct when

Plaintiff was first brought to the hospital, and thus may be material to establishing the policies and practices in place for addressing section 5150 hold applications. As for the "collaboration and conspiracy" issue, it appears from the TAC that the purpose of this allegation is not to assert a standalone conspiracy claim but rather demonstrate that MCH qualifies as a state actor for purposes of raising a *Monell* claim. Given that the precise relationship between MCH and other state actors will ultimately establish whether MCH can be liable for *Monell* claims, the court will not strike any portion of this paragraph.

7. Paragraph 84, footnote 5

This footnote contains information about the condition of a chair while Plaintiff was detained at MCH. MCH moves to strike as immaterial and beyond the scope of the parties' stipulation. Plaintiff does not object. The court shall STRIKE this footnote as immaterial to stating a *Monell* claim against MCH.

8. Paragraph 86

This paragraph alleges that Det. McPartland, an individual who saw Plaintiff while he was at MCH, testified that he saw no indication Plaintiff was mentally disturbed or in need of involuntary detention. Defendant moves to strike because Det. McPartland is not qualified to offer an opinion about Plaintiff's mental state and his passing observation is irrelevant to stating a claim regarding MCH's policies and practices. Plaintiff's opposition makes no reference to this paragraph. The court shall STRIKE this Paragraph as immaterial to stating a *Monell* claim against MCH.

9. Paragraphs 113 – 117

Paragraph 113 contains allegations about the testimony of MCH's Director of Behavioral Health and 30(b)(6) witness, Renee Ruiz, regarding her understanding of MCH's policies for addressing section 5150 Applications. Paragraph 114 alleges that MCH acted jointly with public officials in depriving Plaintiff of his liberty by accepting their representations without conducting their own in person assessment. Paragraph 115 quotes section 5150(e). Paragraph 116 reiterates that MCH conspired and cooperated

9

with the City and County by no conducting an independent assessment of Plaintiff. Paragraph 117 alleges that MCH contracted with the County to serve as an LPS facility and thus directly coordinated with the City and County as a state actor. MCH moves to strikes these allegations as generally beyond the scope of the Stipulation and an improper allegation of collusion and conspiracy between MCH and the City and County Defendants. The court will not strike these paragraphs. In order to state a *Monell* claim against MCH, Plaintiff must establish both that MCH is a state actor and that its policies and practices led to Plaintiff's constitutional deprivations. The allegations contained in these paragraphs are material both to establishing MCH's alleged conduct when Plaintiff was admitted and whether MCH was acting in accordance with any policies or practices. The allegations are also material to demonstrating MCH's relationship with the City and County and whether it qualifies as a state actor in this case.

10. Paragraphs 119 – 121

These paragraphs contain allegations pertaining to Dr. Farrag's testimony about his understanding of MCH's policies for handling involuntary holds and his examination of Plaintiff during the involuntary hold. As with Paragraphs 60–62, MCH moves to strike these allegations as immaterial because Dr. Farrag is not an agent or employee of MCH. MCH also quotes a prior order of this Court for the proposition that "[a]n employee's subjective belief that they generally acted in accordance with 'policies and practices' . . . does not indicate whether there was actually a relevant policy in place." (MTS 15.) This proposition is inapplicable here where Plaintiff is not alleging that Dr. Farrag "generally acted in accordance with policies and practice" but has alleged that Dr. Farrag believed he was following specific policies. (*See, e.g.*, TAC ¶ 120 ("[Dr. Farrag] was under the mistaken impression that LP Act gives him 24 hours AFTER admission to evaluate Plaintiff and 72 hours to continue that evaluation . . . .") It may be that Dr. Farrag's subjective understanding of MCH's policies will not be sufficient to establish that any such policy or practice existed but the court cannot conclude that these allegations are

10

immaterial at this stage. Accordingly, for these reasons and the ones noted above, *see* III.A.5, the court will not strike these paragraphs.

### 11. Paragraphs 122 – 125

These paragraphs contain allegations pertaining to Los Angeles County Mental Health Program Manager Charles Lennon's explanation of the requirements of section 5150 and 5151 and the ways in which MCH's policies allegedly differed from these requirements. MCH moves to strike these allegations as irrelevant because Mr. Lennon is not an agent or employee of MCH and is not familiar with MCH's precise policies and practices. Whether or not Mr. Lennon's testimony can establish what MCH's policies and practice are with regard to section 5150 applications, it is material to Plaintiff's *Monell* claim against MCH. At bottom, Plaintiff's *Monell* claim is that MCH maintains a policy or practice for handling section 5150 applications that was inconsistent with applicable law and led to Plaintiff's alleged constitutional deprivation. As Plaintiff acknowledges, establishing *Monell* liability may require demonstrating that it was MCH's policy and not some other factor, such as the operative law, that led to Plaintiff's alleged injury. (MTS Opp'n 4.) Thus, allegations that state how the applicable law operates are material to establishing how MCH's policy differs. Accordingly, the court will not strike these paragraphs.

### 12. Paragraphs 126–128, 130, and 132

Paragraphs 126 to 128 and Paragraph 130 allege that MCH maintained obsolete policies and practices that failed to comply with applicable law and were the "moving force" behind Plaintiff's alleged injury. Specifically, these paragraphs allege that MCH's policies did not require an in-person assessment and did not require its physicians to receive 5150 training and certification. MCH moves to strike these allegations as beyond the scope of the parties' stipulation and as immaterial because it misunderstands how MCH's policies concerning section 5150 applications actually function. Plaintiff's allegations in these paragraphs about which precise MCH policies he believes led to his constitutional deprivation fall within the scope of "stat[ing] a *Monell* claim against

11

MCH." MCH's contention that Plaintiff misunderstands these policies is irrelevant to whether these allegations should be struck. Eventually, a trier of fact will have to determine what exactly MCH's policies say, if anything, about handling section 5150 involuntary holds and whether these policies were the moving force behind Plaintiff's asserted injury. At this juncture, however, the only question is whether Plaintiff's allegations, which invariably reflect his understanding and not MCH's understanding of the events at issue, are material to stating a *Monell* claim. The court finds they are and will not strike these paragraphs.

### 13. Paragraph 129

MCH contends that Paragraph 129, which alleges that MCH is not entitled qualified immunity, should be struck because it contains irrelevant legal argument. However, in order to state a claim for *Monell* liability against MCH, Plaintiff will have to ultimately establish that MCH is not entitled to qualified immunity. Thus, even if this contention is not strictly an element of stating a prima facie *Monell* claim, it is material to the cause of action. Furthermore, as noted above, absent a showing of prejudice to the Defendant, courts typically do not strike legal argument. Accordingly, the court will not strike Paragraph 126-130.

### 14. Paragraph 131

This paragraph alleges that no one who interacted with Plaintiff had any basis to believe that he was a danger to himself or other. It references both Plaintiff's interactions at MCH and his encounters with officers prior to his admission to MCH. As with Paragraph 1, this paragraph is largely beyond the scope of establishing what policies and practices MCH had in place and whether they complied with statutory requirements. Moreover, the general allegations about MCH personnel contained in this paragraph are redundant with earlier paragraphs that state in detail the precise events at MCH that might give rise to a *Monell* claim. Accordingly, the court shall STRIKE this paragraph.

15. Paragraphs 133 – 134

In these paragraphs, Plaintiff alleges that municipalities may be found liable on a *Monell* claim where there is evidence of a policy of deliberate indifference. Plaintiff presents his understanding of the applicable law governing "deliberate indifference" and then states how MCH's actions would qualify as such. Defendant moves to strike these paragraphs as impermissible legal argument, a misunderstanding of MCH's policies, and improperly relying on the testimony of Dr. Farrag. For the reasons noted above, the court will not strike these paragraphs. The Stipulation agreed to by the parties does not limit the theory on which Plaintiff may state a *Monell* claim against MCH. In these paragraphs, Plaintiff is alleging *Monell* liability on a theory of deliberate indifference. Whether or not this theory is ultimately viable, it is within the scope of the parties' Stipulation.

**B. Motion to Dismiss *Monell* Claims**

"To state a cause of action under section 1983, [a plaintiff] must show that (1) [the defendant] acted under color of state law; and (2) [the defendant] deprived [the plaintiff] of rights secured by the Constitution or federal law." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). In *Monell v. Dept of Soc. Servs.*, the Supreme Court held that municipalities and other local government units could be held liable under section 1983. 436 U.S. at 691. The Court explained, however, that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . on a respondeat superior theory." *Id*. at 691. Rather, a plaintiff must establish that the constitutional violation was caused by "a policy, practice, or custom of the entity." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). In *Tsao v. Desert Palace, Inc.*, the Ninth Circuit clarified that *Monell* liability extends not only to municipalities but also to private entities acting under color of state law. To make out a *Monell* claim against a private entity, a plaintiff must show that "[the defendant] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the defendant]." 698 F.3d 1128, 1139 (9th Cir. 2012) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008)).

Based on the allegations remaining in the TAC, Plaintiff's claim of *Monell* liability against MCH can be summarized as follows. First, Plaintiff alleges that MCH acts under color of law because it has contracted with the City and County of Los Angeles to "serve as a holding facility for persons involuntarily taken into custody under California Welfare and Institutions Code section 5150." (TAC ¶ 69.) Next, Plaintiff asserts that "Welfare and Institutions Code Section 5151 requires [that] '[p]rior to admitting a person to the facility for treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall assess the individual in person to determine the appropriateness of the involuntary detention.'" (*Id.* ¶ 54 (quoting Welf. & Inst. Code § 5151).) Plaintiff then alleges that, contrary to the requirements of section 5151, MCH's policy or practice for handling section 5151 admission does not require an in-person assessment before admission and instead is limited to a "paperwork function" where a nurse reviews that the section 5150 application is completed and signed. (*Id.* ¶ 59.) In support, Plaintiff quotes deposition testimony from MCH's Director of Behavioral Health and 30(b)(6) witness, Renee Ruiz, laying out the requirements policy and allegedly admitting that MCH's policies did not incorporate section 5151's in-person assessment requirement. (*See, e.g.*, *id.*; *see also* Dkt. 120-3 (Ruiz Depo.) at 38:22-39:13). Plaintiff also alleges that he never received an in-person assessment prior to admission as further substantiation for his claim that MCH's policies are deficient. (TAC ¶ 63.)

MCH responds that Plaintiff's allegations have failed to state a claim for *Monell* liability and contends that the claims must be dismissed. As a preliminary matter, MCH asks the court to consider excerpts of Renee Ruiz's deposition transcript. (MCH Mot. To Dismiss ("MTD") 7.) Ordinarily, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002) (citation omitted). However, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without "convert[ing] the motion to dismiss

14

into a motion for summary judgment." *Branch*, 14 F.3d at 454 (internal quotations and citations omitted). Given that Plaintiff expressly quotes Ruiz's deposition and no party disputes the authenticity of the transcript, the court will consider the attached excerpts for purposes of ruling on this motion.

MCH first argues that, contrary to Plaintiff's allegation that he did not receive an in person assessment prior to admission, Ruiz's testimony demonstrates that a nurse designated as the "professional person in charge of the facility"—RN Carlos Megia—conducted an in-person evaluation. (MTD 8 (citing Ruiz Depo 42:21-6; 45:13-15; 46:20-47:8.) This argument is unavailing at the motion to dismiss stage and runs afoul of the rule that the court must accept all factual allegations in the complaint as true. *See Resnick*, 213 F.3d at 447. Although the court may take account of Ruiz's testimony because there is no dispute as to the authenticity of the transcript record, this does not mean that the contents of Ruiz's statements are assumed to be true. A valid use of this document might be to ensure, for example, that the TAC accurately quotes the testimony; it is not to credit Defendant's account of events over Plaintiff's or to draw inferences against the Plaintiff. Furthermore, a review of the relevant excerpt does not contradict Plaintiff's base allegations, which is that he did not receive an in person assessment at the time of admission. Ruiz testified that Nurse Megia performed an assessment sometime between 10:30 PM and 11:53 PM. (*See* Ruiz Depo. at 45:13-16.) An earlier line of questioning, however, suggests that Dr. Farrag ordered acceptance to a unit of the hospital at 3:42 PM. (*See id.* at 41:16-20.) Thus, there remains a question as to when Plaintiff was admitted to MCH and whether an in-person assessment was conducted at that time.

MCH's second argument is that Plaintiff's *Monell* allegations fail because they are premised on a "misunderstanding of MCH's policy and practice." (MTD 9.) According to MCH, Plaintiff has mistakenly assumed that the "paperwork function," which requires an admitting nurse to check that the section 5150 application is properly completed and signed, is the only relevant policy MCH has for handling section 5150 admissions. To the contrary, MCH contends that Ruiz's testimony also demonstrates that "the policy and

15

procedure of MCH at the time of Plaintiff's admission was that the admitting RN performs the in person assessment on admission, and that Plaintiff received such in person assessment." (MTD 8 (citing Ruiz Depo. 39:14-19; 40:3-41:11).) They key testimony on this issue begins with an exchange where Plaintiff's counsel asks if there is a policy or procedure that indicates that someone from MCH has to conduct an in-person assessment prior to admission and Ruiz responds, "Not verbatim," but follows-up that the practice is reflected in the paperwork section. (Ruiz Depo. 39:5-13.) Counsel than asks whether there is any other place that reflects an in-person assessment requirement prior to admission and Ruiz responds "That's done by the admitting RN on the admission." (*Id.* 39:14-19.) This exchange does not reflect a "misunderstanding" on Plaintiff's part but instead a basic dispute between the parties. Plaintiff alleges that MCH's policies and practices require a nurse to complete only a paperwork function prior to admission and do not require an in-person assessment. Plaintiff acknowledges that he was examined at one or more points during his seventy-hour hold at MCH but contends that no in-person assessment was conducted at admission specifically and that this lapse was a result of MCH's policies. MCH responds that it does conduct in-person assessments and cites to the fact that one was performed on Plaintiff's first evening at MCH. While this dispute will eventually have to be resolved, drawing all inferences in favor of Plaintiff, it is not a basis for dismissing the *Monell* claims at this stage. Accordingly, Defendant MCH's Motion to Dismiss is DENIED.

**IV. CONCLUSION**

For the reasons stated above Defendant MCH's Motion to Strike portions of the Third Amended Complaint is GRANTED in part and DENIED in part and Motion to Dismiss *Monell* claims in the Third Amended Complaint is DENIED. Plaintiff is ORDERED to file a Fourth Amended Complaint ("FAC") in accordance with this Order

//

//

//

within fourteen days. The FAC shall conform strictly to this Order, and shall not include additional allegations.

**IT IS SO ORDERED.**

Dated: June 16, 2017

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE